Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN: 184619)
kodenbreit@mahoney-law.net
George B. Singer (SBN: 187185)
gsinger@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.:562-590-5550
Facsimile No.: 562-590-8400

Attorneys for Plaintiff KIM MATTHEWS, as an individual, and as Administrator of the Estate of Hedwig Nosek. and on behalf of all others similarly situated,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIM MATTHEWS, as an individual and as Administrator of the Estate of Hedwig Nosek, Deceased, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. Breach of the Covenant of Good Faith and Fair Dealing (Ca. Ins. § 10234.8).<br>3. Fraudulent Inducement<br>4. Fraud<br>5. Unfair Business Practices (Bus. Prof. Code § 17200 Et Seq.).<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

CLASS COMPLAINT FOR DAMAGES

Plaintiffs KIM MATTHEWS ("Plaintiff Matthews" and/or "Matthews"), individually and as Administrator of the Estate of Hedwig Nosek, Deceased ("Estate of Nosek" also referred to as "Nosek") (collectively "Plaintiffs"), on behalf of themselves, and all others similarly situated, complains and alleges on information and belief as follows:

**INTRODUCTION**

1.   This is a class action brought on behalf of Plaintiffs and the class they seek to represent ("Plaintiff Class"), pursuant to Federal Rule of Civil Procedure 23.  Plaintiff Class consists of all individuals who purchased Prudential long-term care insurance policies ("LTC policies") in the State of California during the Class Period whose lifetime benefits were arbitrarily reduced by Defendant after initiating long term care benefits.  The term "Class Period" is defined as four (4) years prior to the filing of this action through the date of judgment.  Plaintiffs reserve the right to amend this complaint to reflect a different "Class Period" or "Plaintiff Class," as further discovery is conducted.

2.   Plaintiffs individually, and on behalf the class they seek to represent, seek relief against Defendant for Defendant's practice of unilaterally changing and knowingly misrepresenting the terms of LTC policies by arbitrarily reducing the maximum lifetime benefit after a claim was made by the policy holder initiating long term care benefits, contrary to the contracted terms of the policies.

3.   At all times mentioned herein, Defendant, The Prudential Insurance Company of America, was a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey.  Defendant is licensed to do business in the State of California and regularly conducts business throughout California.

4.   Plaintiffs bring this lawsuit seeking injunctive, restitutionary, and monetary relief against Defendants, and each of them, on behalf of Plaintiff

individually, and on behalf of Plaintiff Class to recover compensatory damages, punitive damages, injunctive relief, costs of litigation and attorneys fees, and all other appropriate relief. Plaintiff reserves the right to name additional representatives throughout the State of California.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a), Class Action Fairness Act ("CAFA") because Plaintiffs and Defendant are citizens of different States.  Defendant is a corporation organized and existing under the laws of the State of New Jersey and is authorized to do business in California.

6.     This Court has personal jurisdiction over Defendant because it has significant minimum contacts with this State, and intentionally availed itself of the laws of California by transacting a substantial amount of business throughout the State and this District, selling insurance products and facilitating insurance claims and benefits throughout the State of California and to residents of this district.

7.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(c) as a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in the Central District.

8.     Venue is proper in the United States District Court, Central District of California, and the benefits under the LTC paid on behalf of the policy holder, Hedwig Nosek, in this District. Venue is also appropriate because the policy holder, Hedwig Nosek, was a resident of the State of California, County of Riverside while receiving benefits under the LTC policy and at the time of her death.

**THE PARTIES**

**Plaintiffs**

9.     Plaintiff Matthews is the daughter of the policy holder, Hedwig Nosek and the Administrator of Ms. Nosek's estate. Plaintiff Matthews also maintained

power of attorney over Ms. Nosek's affairs from approximately 2014 when Ms. Nosek was diagnosed with Alzheimer's Disease. Plaintiff Matthews was a personal guarantor for payment to the various assisted living and memory care facilities in which Ms. Nosek resided and has out-of-pocket damages as a result of Defendant's actions.

10.     Plaintiff Estate of Nosek includes Hedwig Nosek who was the policy holder and insured under a long-term care policy ("LTC" and/or "Policy") issued by Defendant on or about 1972 to Ms. Nosek's then husband as part of his Delta Airlines benefits.  When Ms. Nosek divorced her husband, the LTC policy transferred to her and she continued to make premium payments until on or about June 17, 2014, when she sought the Policy benefits in the form of monthly reimbursement payments for her assisted living facility care.  Hedwig Nosek passed away on July 26, 2023. Plaintiff Matthews has been appointed the Administrator of her mother's estate and has been granted the special power specifically to initiate this action by the Riverside County Superior Court in the pending probate matter, Case No. PRMC2300911. (Attached hereto as **Exhibit A** is a true and correct copy of the Riverside Court's Order for Probate and Letters.) Plaintiff Matthews brings this action on behalf of herself as an individual and also as the Administrator on behalf of the Estate of Hedwig Nosek, Deceased ("Estate of Nosek") and on behalf of those Prudential LTC policyholders similarly situated.

**Defendants**

11.     Plaintiffs are informed and believe, and based thereon allege, that Defendant is a New Jersey corporation, that operates locations within the State of California for the purposes of selling insurance policies, including long term care policies, and administers claims under long term care policies for residents of California. On information and belief, and based thereon, Plaintiffs allege that Defendant is conducting business in good standing in California.

12.     Plaintiffs are ignorant of the true names, capacities, relationships and extent of participation in the conduct herein alleged, of the Defendants sued herein as DOES 1 through 10, inclusive, but on information and belief alleges that said Defendants are legally responsible for the payment of wages, and the payment of rest and meal period compensation, to Plaintiff and Plaintiff Class by virtue of their unlawful practices, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of the DOE Defendants when ascertained.

13.     Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant, is legally attributable to the other Defendants. Furthermore, Defendants in all respects acted as an integrated or single enterprise.

14.     Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects as the agent, servant, partner, joint venture, alter-ego, employee, proxy, managing agent, integrated enterprise and/or principal of the co-Defendants, and in performing the actions mentioned below was acting, at least in part, within the course and scope of that authority as such agent, proxy, servant, partner, joint venture, employee, alter-ego, managing agent, and/or principal with the permission and consent of the co-Defendants.  Plaintiffs also alleges the acts of each Defendant are legally attributable to the other Defendants.

15.     Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants sued herein was, at all relevant times, the employer, owner, shareholder, principal, joint venture, proxy, agent, employee, supervisor, representative, manager, managing agent, joint employer and/or alter-ego of the remaining Defendants, and was acting, at least in part, within the course and scope

CLASS COMPLAINT FOR DAMAGES

of such employment and agency, with the express and implied permission, consent and knowledge, approval and/or ratification of the other Defendants. The above co-Defendants, managing agents, and supervisors aided, abetted, condoned, permitted, approved, authorized and/or ratified the unlawful acts described herein.

## GENERAL ALLEGATIONS

16.     Plaintiffs are informed and believe, and based thereon allege, that Defendant's policies and practices described herein are common throughout their claims administration of their LTC policies.

17.     Plaintiff Matthews' mother, Hedwig Nosek, was in her thirties when her then husband, a pilot for Delta Airlines, purchased the LTC policy offered by Defendant. When Ms. Nosek divorced her husband the LTC policy was transferred to Ms. Nosek.  Ms. Nosek continued to make premium payments until on or about June 17, 2014, when she began receiving benefits from her Prudential LTC policy no. R000021768.  At that time, Ms. Nosek was seventy-two (72) years old.

18.     Upon information and belief, when Ms. Nosek assumed the payments for Prudential LTC policy no. R000021768 the lifetime maximum benefit was stated to be four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00) in Defendant's Long Term Care Insurance Plan Confirmation Statement (Certificate of Insurance), issued to Plaintiff Matthews' mother on June 17, 2014. A true and correct copy of the Certificate of Insurance is attached as **Exhibit B**.

19.     In 2014, when Ms. Nosek was diagnosed with Alzheimer's disease, Plaintiff Matthews, as Ms. Nosek's daughter and sole power of attorney for financial and health matters, contacted Defendant to initiate a claim for the long-term care benefits. Plaintiff Matthews was informed by the Prudential representative that the daily maximum paid for residential care was two hundred and seventy dollars ($270.00) and the lifetime maximum benefit ("LMB") was four

hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00). This information is what is stated on the Certificate of Insurance ("492K COI") issued by Defendant on June 17, 2014. A true and correct copy of the Certificate of Insurance is attached as **Exhibit B**.

20.    Plaintiff Matthews was also informed that once the Policy is activated, premiums are no longer paid and the lifetime maximum benefit would not be reduced. In order to release the monthly funds for Ms. Nosek's care, the Policy form requires a signature from the facility administrator as well as from Matthews. The process is cumbersome and often claims could be delayed if the forms were filled out incorrectly by the care facilities. Complicating matters, Prudential does not use electronic mail so all requests and correspondence had to be faxed or sent via the US or private mail systems. All other information was communicated via telephone. For the first several years, the customer service representatives would not verbally provide the LMB balance; Ms. Matthews would have to mail or fax the request and the Defendant would confirm the LMB balance via the U.S. mail system.

21.    After several years, Defendant provided the Policy balance over the phone. At no time did Plaintiff Matthews receive a written monthly statement or balance, similar to what banks would do for mortgage statements or personal loans showing confirmation of payments made and impact on the LMB. In reliance on the representations by Defendant's customer service agents, and in the 492K COI, Plaintiff Matthews secured an Assisted Living facility in Orange County, California for Ms. Nosek for approximately three thousand nine hundred and ninety dollars ($3,990.00) per month. From 2014 to 2018 the monthly cost increased to four thousand six hundred sixty-five dollars ($4,665.00).

22.    By July 2018, Ms. Nosek's disease had progressed and she moved to a memory care facility in Orange County, California. The monthly cost was

approximately five thousand six hundred twenty-five collars ($5,625.00), a rate that was within the Policy daily maximum. Plaintiff Matthews would periodically confirm with Prudential the LMB balance remaining on the Policy so she could make adequate financial and healthcare decisions for her mother. Each time it was confirmed by Defendant the LMB was four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00).

23.    The memory care facility's costs consistently increased over the next two years. Ever mindful of, and in reliance on, the Defendant's 492K COI Plaintiff Matthews moved Ms. Nosek to a facility in Rancho Mirage in July 2021, which cost approximately four thousand one hundred and thirty-five dollars ($4,135.00) per month. At that time Plaintiff Matthews was still relying on the Defendant's LTC policy with a lifetime maximum payout of four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00) to make financial decisions for her ailing mother.  Plaintiff Matthews consistently researched and looked for facilities offering quality care at reasonable costs.

24.    After about a year in Rancho Mirage, Plaintiff Matthews moved her mother to another memory care facility in Hemet in July 2021, where the monthly fees were two thousand five hundred dollars ($2,500.00).

25.    Ms. Nosek's memory care facility in Hemet closed unexpectedly and Plaintiff Matthews moved Ms. Nosek to her fifth (5th) assisted living/memory care facility in the Fall of 2022, also in Hemet.

26.    While Ms. Nosek's mental faculties weakened, she was relatively healthy physically.  Plaintiff Matthews anticipated at some point the Policy would be depleted and she would have to find alternate revenue sources to care for her mother.  However, relying on the information from Defendant, Plaintiff Matthews believed she had time before the Policy funds were depleted.  Ms. Nosek's care would cost about three thousand five hundred dollars ($3,500.00) a month so

Plaintiff Matthews thought she had at least another year to make alternate financial arrangements.

27.     In or around May 23, 2023, Plaintiff Matthews estimated, and relied upon, Defendant's representation that there was approximately seventy thousand dollars ($70,000.00) remaining to be paid under Defendant's LTC policy. Plaintiff Matthews contacted Defendant on or around that time and asked Defendant to confirm the balance. Defendant informed her that there was a balance of six thousand dollars ($6,000.00) remaining. Plaintiff Matthews was shocked and frankly significantly dismayed because that would mean she personally would be responsible for paying the long-term care facility within the next few months. Further, Plaintiff Matthews would be required to sustain those monthly payments personally for the next 1-2 years while the application for Medi-Cal benefits was pending.

28.     For the next several weeks Plaintiff Matthews tried to resolve what she believed was an obvious mistake by Defendant. At the same time, Plaintiff Matthews also began the process of enrolling her mother in Medi-Cal and the California Assisted Living Waiver Program, one that Ms. Nosek would be eligible for. Plaintiff Matthews is informed and believes that this process can take up to one (1) to two (2) years as Ms. Nosek would have to be put on a waiting list.

29.     Distraught and overwhelmed, Plaintiff Matthews had to pay the memory care facility ten thousand dollars ($10,000.00) to cover past and current facility payments that otherwise would have been paid by Defendant as Plaintiff Matthews was the guarantor for the memory care facility payments.

30.     After several phone calls to Defendant, on May 31, 2023, Defendant issued another Long-Term Care Insurance Plan Confirmation Statement, this time stating that the lifetime maximum benefit was four hundred twenty-five thousand two hundred and twenty-five dollars ($425,225.00) ("425K COI"). Defendant's

position was that it made a mistake made by Defendant **nine (9) years ago** when it issued the $492K COI.

31.     Plaintiffs maintained the LTC policy consistently and did not consent to any change in the lifetime maximum benefit.  The Prudential representative told Plaintiff Matthews the matter would be referred to a manager who would call her back with their decision.  Plaintiff Matthews continued to attempt to resolve the issue with Defendant over the next few weeks but did not receive a call back.

32.     On June 8, 2023, Defendant sent Plaintiff Matthews a letter claiming that in October 2021, Prudential conducted a reassessment of eligibility and did not receive from the facility providing Ms. Nosek care the necessary medical information because Defendant sent the request to the wrong facility. This "delay" in receiving medical information, according to Defendant, resulted in an adjustment to the "waiver of premium" provision in the LTC policy. Defendant admits that once it received the medical information it reinstated the waiver of premium provision.  Defendant, however, failed to explain how this resulted in a reduction of the lifetime maximum benefit.  Defendant also failed to provide Plaintiff Matthews with an explanation of how this letter is reconciled with the previous representation by Defendant's representative to Plaintiff Matthews that a "mistake" was made nine (9) years ago and that was the reason for the reduction of the LMB.

33.     On June 12, 2023, Defendant sent Plaintiff a letter indicating that the lifetime maximum benefit was exhausted and the policy had been terminated. Plaintiff Matthews continued to pay out-of-pocket for long term care that should have been paid by Defendant at least up to the original lifetime maximum of four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00).

34.     During this time, Plaintiff Matthews and her family were scrambling to locate the resources to continue to provide the necessary care for her mother causing extreme anxiety and fear.

35.    On June 13, 2023, Ms. Nosek suffered a heart attack and was hospitalized.  After approximately ten (10) days she was returned to the residential memory care facility.  On July 26, 2023, Ms. Nosek passed away.  Plaintiff Matthews was required to personally pay the remaining balance owed to the residential care facility due to Defendant's unexplained adjustment of the lifetime maximum benefits.

36.    Plaintiffs are informed and believe that Defendant knew and understood that people purchase long-term care insurance for many reasons, including wanting to avoid exhausting assets for long-term care, to exercise choices regarding the type of care received, to protect family members from having to pay for care, and to decrease the chances of going on Medicaid.

37.    Plaintiffs are further informed and believe that Defendant further knew and understood that many people seeking long-term care insurance coverage either were on or were going to be on fixed incomes and of limited financial means, and were likely going to be taken care of by surviving family members due to diminished physical and mental capacity of the policy holder.

38.    Long-term care insurance purchasers and monthly premium payees, including Plaintiff and Plaintiff Class Members, relied on the statements and representations made in Defendants marketing materials it produced, published and distributed, as well as the statements made by its agents to Plaintiff and Class Members.

39.    Long-term care insurance purchasers and monthly premium payees, including Plaintiff and Class Members, believed that by purchasing the plans from Defendant they would remain eligible for the stated lifetime maximum benefit as long as the premiums were paid.

40.    LTC policies are expensive. LTC insurance is intended to help defray the cost of home care, assisted living care, nursing home care, and other specialized

skilled facility care required when an individual becomes unable to perform the basic activities of daily living (such as dressing, eating, toileting, continence, or transferring - getting in and out of a bed or chair).

41.    On information and belief, Plaintiff alleges that Defendant's actions as described throughout this complaint were willful and a common business practice to avoid paying the maximum benefits under their LTC policies.

## CLASS ALLEGATIONS

42.    Plaintiffs bring this action on behalf of themselves and all other California residents similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23 and other applicable law.  Plaintiff seeks to represent Classes composed of and defined as follows:

All individuals who were receiving benefits purchased or secured from The Prudential Insurance Company of America long-term care insurance policies ("LTC policies") in the State of California during the four years preceding the filing of this action in which Defendant subsequently reduced or altered the life time maximum benefit while the insured is receiving benefits under the LTC.

43.    Plaintiffs reserve the right to amend or modify the class descriptions with greater specificity or further division into subclasses or limitation to particular issues.

44.    This action has been brought and may properly be maintained as a class action under the provisions of Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

### A.    Numerosity

45.    The potential members of each Class defined herein are so numerous that joinder of all the members of the Class is impracticable.  While the precise

number of the Plaintiff Class has not been determined at this time, Plaintiffs believes there are thousands of members in the Class.

**B.    Commonality**

46.    Common questions of law and fact predominate over any questions affecting only the individuals in the Plaintiff Class arising out of Defendant's conduct as described herein, including but not limited to:

**a.**  Whether Defendant engaging in a pattern and practice to reduce the lifetime maximum benefit for its long-term care policies after the insured began receiving benefits.

**b.**  Whether Defendant failed to give notice to LTC policy holders of the possibility lifetime maximum benefits could be reduced.

**c.**   Whether Defendant engaged in unlawful, unfair and/or fraudulent business practices to avoid paying the lifetime maximum benefits provided in their long-term care policies.

**d.**  Whether Defendant breached the covenant of good faith and fair dealing with regards to its LTC policies.

**e.**  Whether Defendant breached the terms of its LTC policies with regarding to manipulation and alteration of the lifetime maximum benefit.

**f.**  Whether Defendant's manipulation and alteration of the lifetime maximum benefit were fraudulent.

**C.    Typicality**

47.    Plaintiffs' claims are typical of the claims of the Plaintiff Class. Plaintiffs and all Plaintiff Class sustained injuries and damages arising out of and caused by Defendant's common course of conduct in violation of California laws, regulations, and statutes as alleged herein.

///

CLASS COMPLAINT FOR DAMAGES

### D.     Adequacy of Representation

48.     Plaintiffs will fairly and adequately represent and protect the interests of all Plaintiff Class. Plaintiffs' Counsel is competent and experienced in litigating large employment class actions.

### E.     Superiority of Class Action

49.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of each member of the Plaintiff Class is not practicable, and questions of law and fact common to each Class predominate over any questions affecting only individual members of the Class. Each member of the Plaintiff Class has been damaged and is entitled to recovery by reason of Defendant's unlawful policies and practices alleged in the complaint.

50.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## <u>FIRST CAUSE OF ACTION</u>

### BREACH OF CONTRACT

### (Plaintiffs and Plaintiff Class against Defendant)

51.     Plaintiffs incorporate all previous paragraphs of this complaint as though fully set forth herein.

52.     The essential elements to a breach of contract cause of action are: (1) a contract, (2) plaintiff's performance or excused nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.

53.     By purchasing Prudential LTC policy no. R000021768 and paying premiums, Plaintiff Nosek entered into a contract with Defendant. Similarly,

Plaintiff Class Members purchased Prudential LTC policies, paid premiums and thereby entered in a contract with Defendant.

54.    Plaintiffs and the Plaintiff Class performed under the contract by paying the premium payments.

55.    The policy provides for a lifetime maximum benefit ("LMB") that upon activating the benefits and begin receiving payments for long-term care is not supposed to be modified other than deduction of the benefits paid.

56.    By accepting premiums from Plaintiff and the Plaintiff Class Members, and by issuing Long Term Care Insurance Plan Confirmation Statements, Defendant confirmed these contractual relationships.

57.    Upon information and belief, Defendant maintains, and has maintained throughout the Class Period, a consistent policy and practice of unilaterally lowering the lifetime maximum benefit to policyholders in breach of the contracted terms of Class Members' LTC policies.

58.    Defendant unilaterally and without explanation reduced the LMB at some point after Plaintiffs and the Plaintiff Class which constitutes a breach of the contract.

59.    In material breach of the LTC policy and in bad faith, Defendant has failed and refused to fully pay for the expenses that should be covered by the Plaintiff's and Plaintiff Class's LTC policies.

60.    In material breach of the LTC policy and in bad faith, Defendant has accepted premium payments from Plaintiff and Plaintiff Class Members without provided the contracted-for benefits.

61.    Defendant's breach of contract was a substantial factor in causing harm to Plaintiff and Plaintiff Class.

62.    As a result of direct and proximate result Defendant's breach of contract, Plaintiff and the Plaintiff Class Members have suffered damages and have

been forced to incur living and medical care expenses that should have been borne by Defendant, and have paid premiums premised for benefits that should have been provided but were denied.

## SECOND CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## CA INS § 10234.8

**(Plaintiffs and Plaintiff Class against Defendant)**

63.    Plaintiffs incorporate all previous paragraphs of this complaint as though fully set forth herein.

64.    California Insurance Code section 10234.8 states:

(a) With regard to long-term care insurance, all insurers, brokers, agents, and others engaged in the business of insurance owe a policyholder or a prospective policyholder a duty of honesty, and a duty of good faith and fair dealing.

(b) Conduct of an insurer, broker, or agent during the offer and sale of a policy previous to the purchase is relevant to any action alleging a breach of the duty of honesty, and a duty of good faith and fair dealing.

65.    Plaintiff sand Class Members performed all terms and conditions of the LTC policy required to be performed by them, or was excused from doing those things.

66.    The parties were capable of contracting and consented to entering into the Policy.  The Policy had sufficient cause or consideration.

67.    Upon information and belief, Defendant maintains, and has maintained throughout the Class Period, a consistent policy and practice of unilaterally lowering the lifetime maximum benefit to policyholders in breach of the contracted terms of Class Members' LTC policies.

68.     In material breach of the LTC policy and in contravention to the requirements of Insurance Code section 10234.8, Defendant has failed and refused to fully pay for the expenses that should be covered by the Plaintiffs' and Plaintiff Class's LTC policies.

69.     In material breach of the LTC policy and in in contravention to the requirements of Insurance Code section 10234.8, Defendant has accepted premium payments from Plaintiffs and Plaintiff Class Members without provided the contracted-for benefits.

70.     Defendant's bad faith breach of contract was a substantial factor in causing harm to Plaintiffs and Plaintiff Class.

71.     As a direct and proximate result of Defendant's bad faith breach of contract, Plaintiffs and the Plaintiff Class Members have been forced to incur medical care expenses that should have been borne by Defendant, and have paid premiums premised for benefits that should have been provided but were denied.

## THIRD CAUSE OF ACTION

### FRAUDULENT INDUCEMENT

### (Plaintiff and Plaintiff Class against Defendant)

72.     Plaintiffs incorporate all previous paragraphs of this complaint as though fully set forth herein.

73.     On information and belief, Plaintiffs allege that they were harmed because Defendant made a false promise that the lifetime maximum benefit of her mother's LTC policy was four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00) when the LTC policy was first issued and again in 2014 when the policy benefits were activated.   Plaintiff Class Members also were provided a declaration page with the lifetime maximum benefit stated.

///

///

74.    Plaintiffs and Plaintiff Class Members necessarily relied on Defendant's representation and paid policy premiums and otherwise performed all requirements under the terms of the LTC policies.

75.    After accepting premiums for almost forty (40) years and while Defendant was paying long-term care costs under the policy, Defendant claimed in 2023 that the lifetime maximum benefit for Plaintiff was actually only four hundred and twenty-five thousand dollars ($425,000.00), and was exhausted.  Similarly, Plaintiffs are informed and believe that Defendant arbitrarily lowered the lifetime maximum benefit available to Plaintiff Class Members after benefits under the policy were activated.

76.    Defendant intended for Plaintiffs and Plaintiff Class Members to rely on the foregoing misrepresentations when deciding to purchase the LTC policy. Defendant's representations about the LTC policy were false and made with the intent to deceive Plaintiff and Plaintiff Class Members.

77.    Plaintiffs would not have agreed to the terms of the contract if they had known that the lifetime maximum benefit was only four hundred and twenty-five thousand dollars ($425,000.00), or that Defendant could lower the lifetime maximum benefit unilaterally at any time.  Plaintiff Class similarly would not have agreed to the terms of the contract had the lifetime maximum benefits been left to the whims of Defendant.

78.    As a direct and proximate result of the foregoing misrepresentations, Plaintiffs and the Plaintiff Class Members have been forced to incur living and medical care expenses that should have been borne by Defendant, and have paid premiums premised for benefits that should have been provided but were denied.

///

///

///

CLASS COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### FRAUD

### (Plaintiff and Plaintiff Class against Defendant)

79.     Plaintiffs incorporate all previous paragraphs of this complaint as though fully set forth herein.

80.     In consideration of premiums which were paid by Plaintiffs, Defendant sold a LTC policy to Plaintiffs with a lifetime maximum benefit of four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00).

81.     Similarly, Defendant sold Plaintiff Class Members LTC policies with specific lifetime maximum benefits which were then arbitrarily adjusted during the Class Period.

82.     Plaintiffs and Plaintiff Class performed all terms and conditions of the LTC policies required to be performed by them, or were excused from doing those things.

83.     In May, 2023, Defendant informed Plaintiffs that the lifetime maximum benefit had been reduced to four hundred and twenty-five thousand dollars ($425,000.00), had been exhausted, and stopped paying for Plaintiff's mother's care.

84.     Plaintiff Class Members similarly discovered that their lifetime maximum benefits had been unilaterally reduced by Defendant in contravention to the terms of the contract during the Class Period.

85.     Defendant's actions constitute fraud because Defendant accepted premium payments from Plaintiffs premised upon a lifetime maximum benefit of four hundred ninety-two thousand seven hundred and fifty dollars ($492,750.00), but unilaterally modified the benefit after benefits under the policy were activated. Further, had Plaintiffs and Plaintiff Class Members known the lifetime maximum benefit would be reduced after activating benefits to be paid under the policy, they

and family members would have made different financial decisions to care for recipients of the long-term care benefits.

86.    As a direct result of the foregoing misrepresentations, Plaintiffs and the Plaintiff Class Members have been forced to incur medical care expenses that should have been borne by Defendant, and have paid premiums premised for benefits that should have been provided but were denied.

### FIFTH CAUSE OF ACTION

**VIOLATION OF UNFAIR COMPETITION LAW**

**(Plaintiff and Plaintiff Class against Defendant)**

87.    Plaintiffs incorporate all previous paragraphs of this complaint as though fully set forth herein.

88.    On information and belief, Plaintiffs alleges that Defendant engaged in conduct and maintained policies and practices that constitute false, fraudulent, unlawful, unfair, and deceptive business practices in violation of Business and Professions Code section 17200 et seq. (hereinafter the "Unfair Competition Law").

89.    Plaintiffs and Class Members have suffered injury in fact and have lost money as a result of Defendant's unlawful, unfair, and/or fraudulent practices.

90.    Defendant also engaged in a fraudulent business act or practice in that the omissions of material fact described above have a tendency and likelihood to deceive Plaintiffs and Plaintiff Class Members, and did in fact deceive them.

91.    Defendant further failed to uphold their duty of honesty, good faith and fair dealing pursuant to California Insurance Code section 10234.8(a).

92.    Defendant also engaged in an unfair business act or practice in that the justification for providing insurance based on the omissions of material fact delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral,

unscrupulous, unethical, and offensive, and/or causes substantial injury to consumers.

93. Plaintiffs are informed and believe that Defendant engaged in a common practice of misrepresenting pertinent facts to policy holders receiving benefits under Prudential LTC policies of circumstances that could or would reduce the lifetime maximum benefits and payment of other benefits under the policy in violation of California Insurance Code section 790.03(h).

94. The actions of Defendant as alleged within this complaint constitute false, fraudulent, unlawful, unfair, and deceptive business practices, within the meaning of Business and Professions Code section 17200 et seq.

95. Plaintiffs and Plaintiff Class are entitled to equitable relief against such unlawful practices in order to prevent future damage, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

96. As a result of its unlawful acts, Defendant has reaped and continues to reap unfair benefits and unlawful profits at the expense of Plaintiffs and Plaintiff Class Members. Plaintiff is informed and believes, and thereon alleges, that Defendant has been unjustly enriched through Defendant's unlawful, unfair, and fraudulent business practices as alleged throughout this complaint. Plaintiffs are informed and believe, and based thereon alleges, that Plaintiffs and Plaintiff Class Members are prejudiced by Defendant's unfair trade practices.

97. As a direct and proximate result of Defendant's unfair business practices, Plaintiffs, and Plaintiff Class Members are entitled to equitable relief, including full restitution of all denied benefits up to the originally contracted lifetime maximum benefits which have been unlawfully withheld from Plaintiff and Plaintiff Class Members as a result of the business acts and practices described herein, and enjoining Defendant to cease and desist from engaging in the practices described herein, as well as reasonable attorneys fees and costs.

98.     The unlawful conduct alleged herein is continuing, and there is no indication that Defendant will cease such activity in the future.  Plaintiffs allege that if Defendant it will continue to engage in the unlawful conduct previously alleged in this complaint.

99.     Wherefore, Plaintiffs and Plaintiff Class request relief as described herein and below and as deemed just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Plaintiff Class pray for judgment as follows:

1.     That the Court determine that this action may be maintained as a class action;

2.     That Plaintiffs be appointed the representatives of the proposed Class, as appropriate;

3.     That the attorneys of record for Plaintiffs whose name appears in this complaint be appointed class counsel;

4.     For compensatory damages in an amount according to proof with interest thereon;

5.     For economic and/or special damages in an amount according to proof with interest thereon;

6.     That Defendant be found to have engaged in unfair competition in violation of Business and Professions Code section 17200 *et seq.*;

7.     That Defendant be ordered to make restitution to each Class due to its unfair competition, pursuant to Business and Professions Code sections 17203 and 17204;

8.     For attorneys' fees, interest, and costs of suit;

///

///

///

CLASS COMPLAINT FOR DAMAGES

9.      For such other and further relief as the Court deems just and proper.

Dated: March 7, 2024                    **MAHONEY LAW GROUP, APC**

                                        _____
                                        Kevin Mahoney, Esq.
                                        Katherine J. Odenbreit, Esq.
                                        George Singer, Esq.
                                        Attorneys for Plaintiff KIM MATTHEWS
                                        and on behalf of all consumers similarly
                                        situated

CLASS COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff KIM MATTHEWS hereby demands a jury trial on all issues so triable.


Dated: March 7, 2024                    **MAHONEY LAW GROUP, APC**

_____

Kevin Mahoney, Esq.
Katherine J. Odenbreit, Esq.
George Singer, Esq.
Attorneys for Plaintiff KIM MATTHEWS
and on behalf of all consumers similarly
situated

# EXHIBIT A

**DE-140**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
BRYAN C. HARTNELL {066138} (909) 796-6881
HARTNELL LAW GROUP, APC (909) 796-4196
25757 REDLANDS BOULEVARD
REDLANDS, CA 92373-8453
ATTORNEY FOR *(Name):* KIMBERLY K. MATTHEWS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 41002 COUNTY CENTER DRIVE, #100
MAILING ADDRESS: 41002 COUNTY CENTER DRIVE, #100
CITY AND ZIP CODE: TEMECULA, CA 92591
BRANCH NAME: TEMECULA BRANCH

**FOR COURT USE ONLY**

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 07 2023

T HALE

SEP 08 2023

ESTATE OF *(Name):*
HEDWIG NOSEK
                                                    DECEDENT

| ORDER FOR PROBATE | CASE NUMBER: |
|---|---|

**ORDER FOR PROBATE**

ORDER
APPOINTING
☐ Executor
☐ Administrator with Will Annexed
☐ Administrator   ☒ Special Administrator
☐ Order Authorizing Independent Administration of Estate
   ☐ with full authority   ☐ with limited authority

CASE NUMBER:
PRMC2300911

**WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED.**

1. Date of hearing: 09/05/23          Time: 10:00 a.m.          Dept./Room: T-1          Judge: MICHAEL RUSHTON
**THE COURT FINDS**
2. a. All notices required by law have been given.
   b. Decedent died on *(date):* 07/26/2023
      (1) ☒ a resident of the California county named above.
      (2) ☐ a nonresident of California and left an estate in the county named above.
   c. Decedent died
      (1) ☐ intestate
      (2) ☒ testate
      and decedent's will dated: 02/22/2018          and each codicil dated:
      was admitted to probate by Minute Order on *(date):*
**THE COURT ORDERS**
3. *(Name):* KIMBERLY K. MATTHEWS
   is appointed personal representative:
   a. ☐ executor of the decedent's will          d. ☒ special administrator
   b. ☐ administrator with will annexed               (1) ☐ with general powers
   c. ☐ administrator                                 (2) ☒ with special powers as specified in Attachment 3d(2)
                                                       (3) ☐ without notice of hearing
                                                       (4) ☒ letters will expire on *(date):* DISPOSITION OF GENERAL PETITIO
   and letters shall issue on qualification.
4. a. ☐ Full authority is granted to administer the estate under the Independent Administration of Estates Act.
   b. ☐ Limited authority is granted to administer the estate under the Independent Administration of Estates Act (there is no
      authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or
      (3) borrow money with the loan secured by an encumbrance upon real property).
5. a. ☒ Bond is not required.
   b. ☐ Bond is fixed at: $                    to be furnished by an authorized surety company or as otherwise
      provided by law.
   c. ☐ Deposits of: $                         are ordered to be placed in a blocked account at *(specify institution and
      location):*
      and receipts shall be filed. No withdrawals shall be made without a court order. ☐ Additional orders in Attachment 5c.
   d. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.
6. ☐ *(Name):*                KEVIN P. NETT          is appointed probate referee.
   Date:                      Probate Referee
                              P.O. Box 1118          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
                                                     JUDGE OF THE SUPERIOR COURT
7. ☒ Number of pages attached: -1-Temecula CA 92593     ☒ SIGNATURE FOLLOWS LAST ATTACHMENT

Form Approved by the          (951) 664-5145 Fax (951)     **ORDER FOR PROBATE**          Probate Code, §§ 8006, 8400
Judicial Council of California
DE-140 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

11506/chw

Estate of HEDWIG NOSEK, Decedent.

CASE NO.  PRMC2300911

"ATTACHMENT 3(d)2"

The Special Administrator is granted the special power to file an action against a major insurance company and related parties, for fraud, failure to pay claims, elder abuse, and related causes of actions.

Dated:  9·6·23

JUDGE OF THE SUPERIOR COURT

"ATTACHMENT 3(d)2"

DE-150

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):<br>— BRYAN C. HARTNELL {066138}<br><br>HARTNELL LAW GROUP, APC<br>25757 REDLANDS BOULEVARD<br>REDLANDS, CA 92373-8453<br>ATTORNEY FOR (Name) KIMBERLY K. MATTHEWS | TELEPHONE AND FAX NOS.:<br>(909) 796-6881<br>(909) 796-4196 | FOR COURT USE ONLY |
|---|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 41002 COUNTY CENTER DRIVE, #100
MAILING ADDRESS: 41002 COUNTY CENTER DRIVE, #100
CITY AND ZIP CODE: TEMECULA, CA 92591
BRANCH NAME: TEMECULA BRANCH

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

SEP 07 2023

T HALE

ESTATE OF (Name):
HEDWIG NOSEK

DECEDENT

| LETTERS | | CASE NUMBER: |
|---|---|---|
| ☐ TESTAMENTARY<br>☐ OF ADMINISTRATION WITH WILL ANNEXED | ☐ OF ADMINISTRATION<br>☒ SPECIAL ADMINISTRATION | PRMC2300911 |

**LETTERS**

1. ☐ The last will of the decedent named above having been proved, the court appoints (name):

   a. ☐ executor.
   b. ☐ administrator with will annexed.

2. ☒ The court appoints (name):
   KIMBERLY K. MATTHEWS
   a. ☐ administrator of the decedent's estate.
   b. ☒ special administrator of decedent's estate
      (1) ☐ with the special powers specified in the Order for Probate.
      (2) ☐ with the powers of a general administrator.
      (3) ☒ letters will expire on (date):
         DISPOSITION OF GENERAL PETITION

3. ☐ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☐ with full authority ☐ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

**AFFIRMATION**

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
   (Name and title):

4. Executed on (date): 08/21/2023
   at (place): REDLANDS      , California.

   ▶ *Kimberly K. Matthews*
          (SIGNATURE) KIMBERLY K. MATTHEWS

**CERTIFICATION**

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

| (SEAL) | Date: SEP 07 2023<br><br>Clerk, by T. Hale<br><br>*Hale*<br>   (DEPUTY) | (SEAL) | Date: SEP 1 3 2023<br><br>Clerk, by<br><br>*L. Avila*<br>   (DEPUTY) |
|---|---|---|---|

Form Approved by the<br>Judicial Council of California<br>DE-150 [Rev. January 1, 1998]<br>Mandatory Form [1/1/2000]

CEB Essential Forms
ceb.com

11506/cbw

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403, 8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

**EXHIBIT B**

 **Prudential**

The Prudential Insurance Company of America
Long-Term Care Customer Service Center
P.O. Box 8526
Philadelphia, PA 19176-8526
Tel: 1-800-732-0416

**Delta Air Lines, Inc.**
**GROUP CONTRACT NO. : LT-46502-UT**
**LONG TERM CARE INSURANCE PLAN**
**CONFIRMATION STATEMENT**

MS. HEDWIG NOSEK
22 VIA TIMON
SAN CLEMENTE, CA 92673

CERTIFICATE NO.:    R000021768
DATE OF BIRTH:      02/22/1942
STATEMENT DATE:     June 17, 2014

This statement confirms that the person named above has applied and been accepted for Coverage under Prudential's Long Term Care Insurance Plan under the above Group Contract.

Your Coverage provides payment for Eligible Charges for your Long Term Care expenses. The Certificate of Insurance includes all Plan Options available. This Confirmation Statement lists the Plan Option and any other optional benefits you elected when you enrolled for Coverage. Please consult the Schedule of Benefits found in the Certificate of Insurance for a list of benefits under the Plan Option you have chosen. All benefits are subject in every way to the entire Group Contract which includes the Certificate of Insurance.

| | |
|---|---|
| PLAN OPTION SELECTED | $270.00    NURSING HOME CARE DAILY MAXIMUM |
| | $140.00    HOME & COMMUNITY-BASED CARE DAILY MAX |
| BENEFIT WAITING/ELIMINATION PERIOD | 90 DAYS |
| INFLATION PROTECTION | PERIODIC OFFERS |
| NON-FORFEITURE BENEFIT | CONTINGENT |
| PREMIUM REFUND AT DEATH BENEFIT | NO |
| LIFETIME MAXIMUM BENEFIT | $492,750 |
| ORIGINAL EFFECTIVE DATE | 09/01/2008 |
| MONTHLY PREMIUM AMOUNT | $131.81 |

You have elected to pay Long Term Care Insurance Premiums as follows:

| | |
|---|---|
| PREMIUM PAYMENT METHOD: | ELECTRONIC FUNDS TRANSFER |
| FREQUENCY: | MONTHLY |
| AMOUNT: | $131.81 |

**This document serves as your proof of Coverage. Keep this Confirmation Statement and your Certificate of Insurance in a safe place with your other important documents.**

GRP 99922

 **Prudential**

The Prudential Insurance Company of America
Long-Term Care Customer Service Center
P.O. Box 8526
Philadelphia, PA 19176-8526
Tel: 1-800-732-0416 Fax: 877-773-9515

June 17, 2014

Dear Ms. Nosek:

Thank you for choosing Prudential for your Long-Term Care Insurance needs. We have completed our evaluation and are pleased to inform you that you have been approved for coverage.

We are certain you will be pleased with the features and benefits of this insurance coverage once you have had an opportunity to review the enclosed materials. Prudential has developed this plan to help you protect your assets and your independence, and to preserve your right to make choices about your long-term care.

This package contains valuable information about your long-term care insurance coverage and should be kept in a safe place with your other important papers. You will find a Confirmation Statement, your Certificate of Insurance and a copy of our Long-Term Care Insurance Claims Process enclosed. The Confirmation Statement contains information about the Benefit Options you have selected, your Effective Date and premium contribution information. Please make sure this information reflects your coverage selection. The Certificate of Insurance describes in detail the benefits, terms and conditions of the Long-Term Care Insurance coverage. The Long-Term Care Insurance Claims Process provides you with eligibility requirements and key steps in submitting a claim for long-term care insurance benefits.

Long-term care insurance helps provide the peace of mind you want for yourself and for your loved ones. Should you have any questions about the enclosed information or about your Long-Term Care Insurance coverage, please feel free to contact Prudential's Long-Term Care Customer Service Center. Our Customer Service Representatives are available to answer your questions. Please call us at 1-800-732-0416. One of our Representatives will be happy to assist you.

The Prudential Insurance Company of America
Long-Term Care Customer Service Center

Enclosures

STD GLTC 08/07